CATHERINE F. MUNSON (D.C. Bar No. 985717) (*pro hac vice* application to be filed)
KEITH HARPER (D.C. Bar No. 451956) (*pro hac vice* application to be filed)
MARK H. REEVES (D.C. Bar No. 1030782) (*pro hac vice* application to be filed)
Kilpatrick Townsend & Stockton LLP
607 14th Street, N.W.
Washington, D.C. 20005
Telephone: (202) 508-5800
Fax: (202) 505-5858

STEVEN C. MOORE (CO Bar No. 9863) (*pro hac vice* application to be filed)
Native American Rights Fund
1506 Broadway
Boulder, CO 80302
Telephone: (303) 447-8760
Fax: (303) 443-7776

JOHN TABINACA PLATA (CA Bar No. 303076)
jplata@aguacaliente.net
Agua Caliente Band of Cahuilla Indians
5401 Dinah Shore Drive
Palm Springs, CA 92264
Telephone: (760) 699-6837
Fax: (760) 699-6963

Attorneys for Plaintiff
Agua Caliente Band of Cahuilla Indians

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| AGUA CALIENTE BAND OF CAHUILLA INDIANS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COACHELLA VALLEY WATER DISTRICT and DESERT WATER AGENCY,<br><br>　　　　Defendants. | CASE NO. 5:20-cv-00174<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Comes now the Agua Caliente Band of Cahuilla Indians and shows as follows:

## INTRODUCTION

1. The Coachella Valley Water District and the Desert Water Agency (Defendants or Water Districts) presently impose a "replenishment assessment charge" (RAC) on the production of groundwater by the Agua Caliente Band of Cahuilla Indians (Agua Caliente or the Tribe). By way of example, DWA currently claims that the Tribe owes DWA more than $230,000 for the Tribe's production of the Tribe's federally reserved groundwater. *See* Exhibit A. Imposition of the RAC on water held in trust for the Tribe and its members is unlawful.

2. Agua Caliente, as beneficial owner of the groundwater in question, brings this action on its own behalf and as *parens patriae* on behalf of its tribal members, seeking to prevent the Water Districts from unlawfully imposing the RAC on water that the United States reserved for Agua Caliente.

3. The United States impliedly reserved to the Tribe and its members a federal right to groundwater sufficient to accomplish the purposes of the Agua Caliente Reservation. *Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.*, 849 F.3d 1262 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 468, 199 L. Ed. 2d 356 (2017), *and cert. denied sub nom. Desert Water Agency v. Agua Caliente Band of Cahuilla Indians*, 138 S. Ct. 469, 199 L. Ed. 2d 356 (2017); *Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.*, Case No. EDCV 13-883-JBG, 2015 WL 13309103 (C.D. Cal. Mar. 24, 2015). The Tribe's reserved right is senior and paramount to all others.

4. Nevertheless, Defendants charge and collect replenishment assessments from producers of the Tribe's reserved groundwater, including the Tribe and those who lease Reservation trust land and water from the Tribe and tribal member allottees.

5. The Tribe's federally reserved water is held in trust by the United States for the benefit of the Tribe and its members and is exempt from Defendants' replenishment

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

assessments under settled federal law. Through this lawsuit, Agua Caliente seeks a declaration that federal law bars the imposition of replenishment assessments on groundwater that the United States reserved for Agua Caliente and an injunction to stop the Water Districts from injuring the Tribe and tribal member allottees by unlawfully imposing replenishment assessments on water reserved and held in trust for them by the United States.

## PARTIES

6. Plaintiff Agua Caliente is a federally recognized sovereign Indian Tribe with an elected legislative body that operates under a Constitution and by-laws approved by the Commissioner of Indian Affairs on April 18, 1957, as amended. The Tribe, for itself and on behalf of its members, is the beneficial owner of a federal reserved right to groundwater. The Tribe sues on its own behalf and in its capacity as *parens patriae* on behalf of its members.

7. Defendant Coachella Valley Water District (CVWD) is a county water district formed in 1918 and organized pursuant to the California Water Code. CVWD's service area includes portions of the Agua Caliente Reservation.

8. Defendant Desert Water Agency (DWA) is an independent special district created by a special act of the California State Legislature in 1961. DWA's service area includes portions of the Agua Caliente Reservation.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1353, and 1362 because the Tribe is a federally recognized Indian tribe and its claims arise under the Constitution, laws, federal common law, and executive orders of the United States.

10. The Court has personal jurisdiction over each of the Defendants because each of them resides and/or conducts business in the State of California and the facts,

actions, and occurrences giving rise to this litigation take place within the Central District of California.

11. Venue in this Court is appropriate under 28 U.S.C. § 1391(b) because the Defendants are located within this district and because the replenishment assessment charge at issue is assessed and collected in this district and is levied on the Tribe's reserved water located within this district.

## FACTS

I. <u>The United States holds land and water rights in trust for Agua Caliente and its members free from state or local encumbrance and taxation.</u>

12. The Cahuilla Indians, ancestors of the present day Tribe and its members, have lived in the Coachella Valley since time immemorial and relied on and developed groundwater resources of the Coachella Valley for traditional cultural, domestic, and agricultural subsistence purposes.

13. The United States established the Agua Caliente Reservation (Reservation) on May 15, 1876, by the Executive Order of President Ulysses S. Grant, from lands in the Coachella Valley that the Cahuilla Indians used and occupied since time immemorial. The United States subsequently expanded the Reservation through an Executive Order in 1877 and other administrative acts. Today, the Reservation includes over 31,396 acres of land, more than 70% of which is held in trust by the United States for the benefit of the Tribe or individual tribal members.

14. The Mission Indian Relief Act of 1891 (MIRA), 26 Stat. 712, authorized the patenting of the Reservation and provided that the United States would hold the Reservation land in trust "for the sole use and benefit" of Agua Caliente "free of all charge or incumbrance whatsoever." *Id.*

15. MIRA also authorized the Secretary of the Interior to allot parcels of the Reservation to individual tribal members (allottees) and provided that those allotments would likewise be held by the United States "in trust for the sole use and benefit of the

Indian to whom such allotment shall have been made … free of all charge or incumbrance whatsoever." 26 Stat. at 713.

16. In addition to MIRA, the Act of February 8, 1887, 24 Stat. 388, the Act of June 25, 1910, 36 Stat. 859, and the Act of March 2, 1917, 39 Stat. 969, 976, directed the Secretary of Interior to "cause allotments to be made" to the Agua Caliente tribal members along with members of other Mission Indian tribes.

17. While MIRA and subsequent acts initially contemplated that the United States would hold allotments in trust for a period of years and then convey them to their Indian owners in fee simple, subsequent legislation extended the trust periods indefinitely, resulting in the United States continuing to hold the vast majority of Agua Caliente Reservation land in trust to this day.

18. In 1949, Congress reaffirmed that lands held in trust by the United States for the benefit of the Tribe and its members are not subject to encumbrance or taxation unless specifically authorized by Congress. *See* P. Law. 322, 63 Stat. 705 (Oct. 5, 1949).

19. In 1953, Congress again confirmed that Indian water rights held in trust by the United States are insulated from State or local governmental interference when it enacted Public Law 280 (67 Stat 588), 28 U.S.C. § 1360. Public Law 280 granted several states civil jurisdiction over Indian lands within their borders, but explicitly did not authorize "the alienation, encumbrance, or taxation of any real or personal property, including water rights, belonging to any Indian or any Indian Tribe … that is held in trust by the United States." § 1360(b). Public Law 280 also withheld from states any authority to "regulat[e] the use of such property in a manner inconsistent with any Federal treaty, agreement or statute or with any regulation made pursuant thereto." *Id*.

20. In 1959, Congress enacted Public Law 86-339 to equalize allotments of land on the Agua Caliente Reservation. Lands allotted pursuant to this Act were restricted from "assignment, sale, hypothecation, attachment, or levy" without written approval

of the Secretary of Interior. 73 Stat. at 604. These restrictions remain intact for thousands of acres of allotted lands on the Reservation today.

21. The Indian Reorganization Act, enacted in 1934, authorized the Secretary of the Interior to acquire additional land and water rights for Indians and provided that any rights acquired pursuant to that Act, like previously established Indian trust rights, would be held by the United States "in trust for the Indian tribe or individual Indian . . . . and such rights or lands shall be exempt from state and local taxation." 25 U.S.C. § 5108.

22. In 2017, the Ninth Circuit Court of Appeals held that the federal government impliedly reserved groundwater, as well as surface water, for the Agua Caliente when it created the Reservation. *Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.*, 849 F.3d 1262, 1266, 1268 (9th Cir. 2017). The United States reserved water for the Tribe pursuant to the Property Clause, Art. IV, § 3 of the Constitution. *United States v. Cappaert*, 426 U.S. 128, 138 (1976); *Arizona v. California*, 373 U.S. 546, 597-98 (1963).

23. Federal law entitles allottee landowners to use a share of the groundwater reserved for the Tribe. *See, e.g.*, 25 U.S.C. § 381; *United States v. Powers*, 305 U.S. 527 (1939); *Colville Confederated Tribes v. Walton*, 647 F.2d 42 (9th Cir. 1981).

24. The reserved water right that the United States holds in trust for Agua Caliente and its members is fully vested and perfected and has been so at least from the time of the Reservation's establishment. *See Arizona v. California*, 373 U.S. 546, 600 (1963).

II. <u>The Tribe and its members use and produce reserved groundwater.</u>

25. A substantial number of tribal members are the beneficial owners of allotments held in trust by the United States.

26. Agua Caliente produces its federal reserved groundwater for use on the Reservation, and it both owns and leases trust land to businesses that operate on the

Reservation. These businesses depend upon the availability of reliable and affordable water supplies.

27. The Tribe and a substantial segment of tribal members derive income from their trust lands by entering into long-term leases of Reservation trust land. Federal approval is required for all allottee leases and many tribal leases. Many of these leases permit the lessee's use of reserved water, as the land is arid and in a desert environment and thus would be virtually valueless without it.

28. Water from wells on trust property is used for many purposes, including irrigation, domestic, and business purposes.

29. Tribal member lessors frequently receive a percentage of revenues generated by the lessee, meaning that the income generated by the lease of Reservation trust land and water is directly related to water-dependent use of the leased premises.

30. The leasing of reserved water to third parties does not alter the status or character of the reserved right or diminish the Tribe's water right in any way. *See, e.g.*, *Walton*, 647 F.2d at 50-51.

31. The Tribe regulates its reserved groundwater pursuant to its inherent and exclusive sovereign authority to regulate its federal reserved property. *See generally* Agua Caliente Water Authority Ordinance No. 55 (Water Authority Ordinance).[1] The Tribe also presently uses its own groundwater for a variety of purposes.

III. <u>The Water Districts unlawfully assess and encumber the Tribe's federal reserved groundwater.</u>

32. In an effort to partially offset longstanding and ongoing overdraft of the Coachella Valley Basin, caused principally by the Water Districts who are by far are the largest producers of groundwater in the vicinity of the Reservation, the Water

---

[1] Available at http://www.aguacaliente.org/downloads/Ordinance55-TribalWaterAuthority.pdf

1  Districts import Colorado River water for introduction to the aquifer, a process known
2  as artificial recharge.

3      33. Both of the Water Districts impose RACs on water production within
4  designated "areas of benefit" which Defendants purport is necessary to cover the costs
5  of their artificial recharge programs. *See* Cal. Water Code §§ 31632; 100-15.4(b).

6      34. The areas of benefit where RACs are assessed include much of the Agua
7  Caliente Reservation.

8      35. DWA began its groundwater assessment program in 1978 and CVWD began
9  its groundwater assessment program in 1980. Since this time, both Defendants have
10 levied increasingly high assessments on groundwater production.

11     36. CVWD claims authority under state law to each year "levy a replenishment
12 assessment upon all water production during the following fiscal year" in a
13 discretionary amount set by the Board not exceeding the sum of certain costs
14 purportedly related to replenishment operations. *Id.* at §§ 31632.5; 31633. Producers
15 who fail to pay the RAC are liable to CVWD at a rate of one percent per month in
16 interest on the delinquent amount. *Id.* at § 31636.5.

17     37. DWA likewise claims the power to "levy a replenishment assessment upon
18 all water production." *Id.* at § 100-15.4(e). Producers failing to pay the RAC are liable
19 to DWA at the rate of one percent per month in interest on the delinquent amount. *Id.*
20 at § 100-15.4(l).

21     38. According to DWA's 2019-2020 Engineer's Report, DWA's proposed
22 RAC for 2019-2020 for the West Whitewater River Subbasin and Garnet Hill areas of
23 benefit, which includes much of the Reservation, is $155.00 per acre (AF) foot of water,
24 which will reportedly generate an expected $5,504,050. *See* DWA 2019/2020
25 Groundwater Replenishment Assessment Report at I-6. DWA also intends to impose
26 additional charges as "other charges and costs" in each subbasin to recover past deficits
27 and future increases. *Id.*

28

39. CVWD's proposed RAC for the West Whitewater River Subbasin area of benefit for 2019-2020 is $158.18 per AF. *See* CVWD 2019-2020 Engr's Rep. on Water Supply and Replenishment Assessment at 4-11-4-12.

40. The Water Districts assess the RAC on all groundwater production within the designated areas of benefit, including production by the Tribe, tribal lessees, and tribal members' lessees that produce the Tribe's federal reserved groundwater. *See*, *e.g.*, Exhibit A.

41. In addition to assessing the RAC on the Tribe for its production and use of its own federal reserved groundwater, DWA has actively opposed the Tribe's efforts to add additional trust land to the Reservation based in part on the United States' refusal to make the Tribe's use of water underlying that trust land subject to the RAC. For example, in an administrative appeal challenging the United States' decision to take additional land into trust for the Tribe without mandating the Tribe's payment of the RAC for water produced on that land, DWA explicitly argued that the production of groundwater underlying the Reservation is subject to the RAC. *See DWA v. Acting Pac. Reg'l Dir., Bureau of Indian Affairs*, 59 IBIA 119, 127-28 (2014).

42. Charging the Tribe, and those with whom the Tribe and its members have entered into leases, for the production of the Tribe's own federal reserved water constitutes an impermissible and unlawful burden and encumbrance of the federal reserved water right held in trust by the United States for the benefit of the Tribe and its members.

43. The Tribe and its members are harmed by having to pay for the use of their own federally reserved groundwater and by having the lease value of their water diminished by the Water Districts' imposition of the RAC on lessees who produce the Tribe's groundwater.

44. The imposition of the RAC on the production of the Tribe's federal reserved groundwater also unlawfully interferes on the Tribe's inherent and exclusive sovereign authority to regulate its water resource.

45. State and local governments and agencies may not regulate water use on federal reservations, including Indian reservations, absent explicit congressional authorization. *See, e.g.*, *Fed. Power Comm'n v. Oregon*, 349 U.S. 435 (1955); *Cohen*, § 19.04[2] at 1238.

46. Congress has not authorized the Water Districts to regulate water use, whether through the imposition of the RAC or otherwise, on the Agua Caliente Reservation.

47. Federal law also provides that the termination or diminishment of Indian rights can only be effectuated through express federal legislation or clear and unambiguous expression of congressional intent.

48. Imposition of the RAC on the Tribe, its members, and their lessees' use of the Tribe's federal reserved groundwater limits and restricts the rights of the Tribe and its members and diminishes the Tribe's federal reserved water right. *See, e.g.*, *Walton*, 647 F.2d at 50-51 (providing that any "restriction on the transferability" of Indian water rights "is a diminution of Indian rights that must be supported by a clear inference of Congressional intent" (citation omitted)).

49. Congress has not authorized the Water Districts to limit, restrict, or diminish the rights of the Tribe or its members in the Tribe's federal reserved water.

50. Federal regulations explicitly prohibit state and local governments from "limiting, zoning or otherwise governing, regulating, or controlling the use or development of any real or personal property, including water rights" on "any such property leased from or held or used under agreement with and belonging to any Indian or Indian tribe, band or community that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States." 25 C.F.R. § 1.4(a).

51. Application of the RAC to groundwater that the United States holds in trust for the Tribe and its members is an unlawful taxation, restriction, and encumbrance of the Tribe's federal reserved water in violation of federal statutory, regulatory, and common law.

52. Application of the RAC to groundwater that the United States holds in trust for the Tribe and its members also infringes on the exclusive sovereign regulatory authority of the Tribe and the United States over the Tribe's federal reserved groundwater.

53. Imposition of the RAC on the Tribe's federal reserved groundwater violates the Tribe's Water Authority Ordinance, a duly enacted law of the Tribe, which provides that "the Tribe's federal reserved right to groundwater preempts and precludes any groundwater replenishment assessment imposed by Non-Tribal Water Agencies on producers of the Tribe's Groundwater on the Reservation." Water Authority Ordinance, Ch. 2, § II(L).

54. This Court held in *Preckwinkle v. CVWD*, No. 05-cv-626, that "federal law reserving [Agua Caliente's] water rights, whether exercised by [allottees] or their tenant, preempts the Water District's levy of replenishment assessments." Doc. 210, Page ID. #2635

55. The Tribe has strong and immediate sovereign, proprietary, and economic interests in preventing the Water Districts from imposing the RAC on its federal reserved groundwater.

## COUNT 1 — UNLAWFUL TAXATION AND REGULATION

56. The Tribe realleges, and incorporates by reference herein the allegations in paragraphs 1 through 55.

57. The Tribe, as a sovereign Indian nation with jurisdiction over its Reservation, has an inherent and federally-recognized right to make its own laws and be governed by them.

58. The Tribe has exercised its sovereign authority over its federal reserved groundwater by, *inter alia*, enacting its Water Authority Ordinance and establishing its Water Authority.

59. Imposition of the RAC on the Tribe's federal reserved groundwater directly violates the Water Authority Ordinance.

60. By applying the RAC to the Tribe's federal reserved groundwater, the Water Districts unlawfully infringe on and interfere with the Tribe's sovereign interest in governing and regulating its federal reserved water.

61. Trust lands and water within the Tribe's Reservation lands are subject to an array of federal statutes and common law that prohibit state and local taxation, encumbrance, or other regulation of Indian trust land and water resources.

62. The RAC directly and substantially encumbers and injures the Tribe and its members' ability to use the Tribe's federally reserved water, resulting in the diminution and limitation of the Tribe's federal reserved water right.

63. Congress has never authorized the Water Districts to impose the RAC on the Tribe's federal reserved groundwater, nor has the Secretary of Interior purported to approve the RAC or any other encumbrance on the Tribe's federally reserved groundwater or its use thereof.

64. Federal law bars the imposition of the RAC on the Tribe's federal reserved groundwater. This remains true regardless of whether the Tribe's federal reserved groundwater is produced by the Tribe, tribal members, or third party lessees.

65. The replenishment assessment decreases the value of Reservation land, limiting the economic opportunities available to the Tribe and its members.

66. To the extent that the Tribe's federal reserved water can be replenished through natural recharge of the aquifer, the Tribe and its members derive no benefit from the Water Districts' artificial recharge efforts, and both the assessment of the RAC

and the activities that it helps to fund are unnecessary to address production of the Tribe's federal reserved groundwater.

67. The Tribe and its members have suffered and will continue to suffer irreparable harm, in the form of injury to sovereign interests and serious economic harm, from the Defendants' application of the RAC to the Tribe's federal reserved groundwater.

68. The Tribe is entitled to a declaration that the RAC unlawfully taxes, encumbers, and regulates the Tribe's federal reserved groundwater.

69. The Tribe is further entitled to a declaration that the RAC unlawfully infringes on the Tribe's inherent and federally-recognized sovereign rights to self-government and natural resource management.

70. The Tribe is further entitled to a declaration that the RAC's application to the production of the Tribe's federal reserved groundwater, regardless of the entity producing such water, is barred and preempted under federal law.

71. The Tribe is also entitled to permanent injunctive relief enjoining the Water Districts from imposing the RAC on the Tribe's federally reserved water.

72. The equities of this case and the public interest favor the upholding of the sovereign and proprietary rights of the Tribe and its members and the enforcement of federal law barring the unlawful taxation, encumbrance, and regulation of Indian trust property.

**WHEREFORE**, the Tribe prays and demands an order from this Court that:

1. Declares that federal law bars and preempts the assessment of the RAC on the Tribe's federal reserved groundwater;

2. Further declares that the Tribe and tribal members, as well as any lessees, are not required to pay the RAC in connection with or based on their production of the Tribe's federal reserved groundwater;

     3.     Enjoins the Water Districts from any efforts to impose, assess, levy, charge, or collect the RAC on the production of the Tribe's federal reserved water;

     4.     Awards such other and further relief as may be deemed just and proper;

     5.     Awards attorney's fees and costs; and

     6.     Retains this Court's jurisdiction for purposes of enforcement of its decree.

Dated: January 24, 2020     By /s/ John Tabinaca Plata

CATHERINE F. MUNSON
(D.C. Bar No. 985717, *pro hac vice* application to be filed)
KEITH M. HARPER
(D.C. BAR. NO. 451956, *pro hac vice* application to be filed)
MARK H. REEVES
(D.C. Bar No. 1030782, *pro hac vice* application to be filed)
**KILPATRICK TOWNSEND &STOCKTON LLP**

JOHN TABINACA PLATA (CA Bar No. 303076)
jplata@aguacaliente.net
**AGUA CALIENTE BAND OF CAHUILLA INDIANS**

STEVEN C. MOORE
(CO Bar No. 9863, *pro hac vice* application to be filed)
**NATIVE AMERICAN RIGHTS FUND**
*Attorneys for Plaintiff*
*Agua Caliente Band of Cahuilla Indians*